**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                No. 98-4111

ANTHONY JOE WILLIAMSON,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, Chief District Judge.
(CR-97-345)

Argued: October 27, 1999

Decided: December 2, 1999

Before WILKINSON, Chief Judge, and WILKINS
and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Fletcher Nettles, IV, Assistant Federal Public
Defender, Florence, South Carolina, for Appellant. John Michael Bar-
ton, OFFICE OF THE UNITED STATES ATTORNEY, Florence,
South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United
States Attorney, Alfred W. Bethea, Jr., Assistant United States Attor-
ney, Florence, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Anthony Joe Williamson appeals his convictions and sentence for possession of cocaine base with the intent to distribute, see 21 U.S.C.A. § 841(a) (West 1999), and conspiracy to possess with the intent to distribute cocaine base, see 21 U.S.C.A. § 846 (West 1999), contending that the district court erred in denying his motion for mistrial, denying his request for certain jury instructions, and enhancing his sentence for his role in the conspiracy as a leader or organizer. Finding no reversible error, we affirm.

I.

For nearly three years, members of a drug task force in Marion County, South Carolina, investigated Williamson's drug trafficking activities with little success. However, on July 8, 1997, Williamson was arrested for driving with a suspended license. Pursuant to his arrest, officers searched Williamson's vehicle and recovered from under the driver's seat a bag that contained marijuana and 47.4 grams of cocaine base.

At trial, the Government produced evidence of Williamson's criminal activities through witnesses to whom he had distributed cocaine base and from witnesses who had observed Williamson engage in drug transactions. The Government also offered testimony that Williamson ran a "crack house" with his cousin, Cathy Lee Legette, and served as the primary supplier of cocaine base for three well-known drug dealers in the area. Additionally, the Government presented evidence regarding a "reverse sting" operation in which local law enforcement officers arranged for a confidential informant to contact Williamson and set up a meeting for a drug purchase. After the initial meeting occurred, Williamson agreed to buy a half-pound of cocaine for $8,500 and set the time and place for the transaction. When Wil-

liamson arrived at the appointed place, however, he did not complete the transaction. The undercover police officer from whom Williamson was to have purchased the drugs testified that Williamson broke off the deal when he saw a police vehicle. Williamson did not object to this testimony. However, Williamson did object when the confidential informant and another investigating officer speculated as to why he failed to complete the transaction. Immediately upon sustaining these objections, the court instructed the jury to disregard that portion of the witnesses' testimony. Williamson sought no other relief at that time.

During the Government's case-in-chief, the prosecutor asked Valerie Lewis, one of Williamson's frequent customers, how long she had known Williamson. She replied, "When I first went to jail, I didn't know him until I got out, and I've known him since--about two years. About two years. But one prior year I knew about him from his people, by him--he was already in jail." J.A. 205. Williamson moved for a mistrial on the basis that the comment that he had been in jail was impermissibly prejudicial. During the bench conference on the motion, Williamson also complained that several of the Government's witnesses had speculated on Williamson's state of mind during the aborted reverse sting operation.

The court agreed that Lewis' statement was improper but denied the motion for a mistrial, preferring instead to give a curative instruction to the jury. Williamson stated that he would prefer that the court give the instruction at the conclusion of Lewis' testimony. However, he did not move for the curative instruction at the appropriate time, and it was not given.

During the pre-charge conference, Williamson requested that the district court instruct the jury that a defendant cannot conspire with a government informant. The court stated that counsel could argue that point to the jury, but because the court was concerned that Williamson's requested instruction might confuse the jury, the court was undecided whether it would give the charge. Williamson indeed argued to the jury that there can be no conspiracy between a defendant and a police officer or government informant because the officer or informant would not have the intent to form an unlawful agreement. However, the court did not give the requested instruction. Williamson made no specific objection to the charge given by the court.

Williamson was convicted of possession of cocaine base with the intent to distribute and conspiracy to possess with the intent to distribute cocaine base. In sentencing Williamson, the court found that at least 500 grams of cocaine base was attributable to him and therefore determined that his base offense level for conspiracy to possess with the intent to distribute cocaine base was 36. See U.S. Sentencing Guidelines Manual § 2D1.1(c)(2) (1997). **1** The court adjusted that offense level four levels, to 40, based on a finding that Williamson was an organizer or leader of a criminal activity involving five or more persons or that was otherwise extensive. See U.S.S.G. § 3B1.1(a). Because the court determined Williamson's criminal history category to be III, the applicable guideline range was 360 months to life imprisonment. The court sentenced Williamson to 360 months.

II.

Williamson first alleges that the district court improperly denied his motion for a mistrial. We review the grant or denial of a motion for a mistrial for clear abuse of discretion. See United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1995). In order for the denial of a motion for mistrial to constitute an abuse of discretion, the defendant must establish that he was prejudiced by the improper evidence. See id.

We conclude that the challenged comment did not prejudice Williamson. The comment was brief, isolated, and made in the course of a two-day trial in which numerous witnesses testified regarding Williamson's substantial role in the drug trafficking conspiracy. The matter arose only incidentally, with neither the witness nor the Government making any repeated reference to it. We therefore hold that the district court did not abuse its discretion in denying the motion.**2**

_____

**1** The convictions were grouped pursuant to U.S.S.G. § 3D1.2.
**2** We also conclude that Williamson was not entitled to a mistrial based on improper testimony speculating about his state of mind. Williamson cannot demonstrate that he was prejudiced by these statements. There was overwhelming evidence that he had engaged in numerous other drug trafficking transactions. Further, the court sustained his objections and quickly instructed the jury to disregard the comments. See Dorsey, 45 F.3d at 817-18.

4

III.

Next, Williamson contends that the district court should have instructed the jury that a defendant cannot conspire with police officers and government informants. We disagree.

Because Williamson did not object to the instructions after they were given to the jury, as required by Federal Rule of Criminal Procedure 30, our review is for plain error only. See Fed. R. Crim. P. 52(b). Accordingly, in order to establish our authority to notice the error, Williamson must demonstrate that the failure to give the instruction was error, that the error was plain, and that it affected Williamson's substantial rights. See United States v. Olano , 507 U.S. 725, 732 (1993). Even if Williamson can satisfy these requirements, we retain discretion to refrain from correcting the error. See id. at 735.

Here, even assuming that the failure to give the instruction was plain error, Williamson cannot establish that his substantial rights were affected, i.e., "that the error actually affected the outcome of the proceedings." United States v. Nicolaou, 180 F.3d 565, 570 (4th Cir. 1999) (internal quotation marks omitted). The court specifically instructed the jury that members of a conspiracy must intend to advance the objectives of the conspiracy, and defense counsel argued to the jury the obvious point that people working in a reverse sting operation lack such intent. Accordingly, Williamson has failed to establish our authority to notice the error.

IV.

Finally, Williamson argues that the district court erred in increasing his offense level by four on the basis of its finding that he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. See U.S.S.G. § 3B1.1(a). Williamson does not challenge the extensiveness of the conspiracy but maintains that the court erred in finding that he was an organizer or leader. Among the factors a court should consider in deciding whether to apply the § 3B1.1(a) enhancement are

> the exercise of decision making authority, the nature of par-
> ticipation in the commission of the offense, the recruitment

5

of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 comment. (n.4). That a defendant is the major supplier of drugs for the charged conspiracy is also relevant to the question of whether he is a leader or organizer. See United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993). A determination by the district court concerning a defendant's role in the offense is a factual determination reviewable under the clearly erroneous standard. See United States v. Arnoldt, 947 F.2d 1120, 1128 (4th Cir. 1991).

The evidence in the record demonstrates that Williamson was an organizer of the charged conspiracy. He had established a distribution network and, as the primary (if not sole) supplier of drugs for the conspiracy, controlled the amount of cocaine base each of his distributors would have to sell. Indeed, one of his customers testified that when police pressure on Williamson became too intense, Williamson simply referred the buyer to one of his distributors for further purchases. The evidence also suggested that Williamson retained decision-making authority regarding sales at the crack house. In light of all of this evidence, we cannot say that the district court clearly erred in finding that Williamson was an organizer of the criminal activity.[3]

_____

[3] Although we affirm the enhancement, we note our disappointment in the Government's brief, which failed to cite authority from this circuit bearing directly on this issue. See Banks, 10 F.3d at 1057. In addition, the brief on this issue proved to be of limited assistance to the court as it consisted only of a little more than one page with no references to the joint appendix to support its factual assertions. Attorneys should not assume that this court will take the initiative to comb the record to find support for undocumented assertions. We also reiterate to the district court that the application of the sentencing guidelines requires specific factfinding and enumeration in some detail of the underlying facts on which the court relies.

V.

In sum, we conclude that the district court did not commit reversible error in denying Williamson's motion for mistrial, in refusing to instruct the jury that a defendant cannot conspire with police officers or government informants, or in enhancing his guideline range four levels pursuant to § 3B1.1(a). Accordingly, we affirm his convictions and sentence.

AFFIRMED

7